## BETTISON vs. BUDD.

The filing of a paper does not consist in the endorsement by the clerk, that it was
filed, but on its being placed, as a permanent record, in the office or case where it
belongs: And were the original assessment list for the year, 1844, without
endorsement as to the time it was filed, is proved to have been in the office of the
clerk in the fall of that year, when it was turned over to him as the successor of the
clerk who received it and who has since died, it will be presumed that it was filed
by the officer within the time prescribed by law.

The assessment of land for taxes, and the advertisement and sale of the land for
non-payment of the taxes must be in the same name, whether of the true owner,
or others, or unknown owners.

*Error to Pulaski Circuit Court.*

Hon. JOHN J. CLENDENIN, Circuit Judge.

FOWLER & STILLWELL, for the plaintiff.

HEMPSTEAD and WILLIAMS, for the defendant.

Hon. HARRIS FLANAGIN, Special Judge, delivered the opinion
of the court.

This was an action of ejectment by Bettison vs. Budd, for
lots one, two, three and four, in block twelve, east of the Qua-
paw line, in the city of Liltle Rock. Judgment was given for
the defendant, and it was brought to this court, and reversed.
See *Bettison vs. Budd*, 15 *Ark. Rep.* 546.

Afterwards, in July, 1857, the case went to a jury, who found
a verdict for the plaintiff for lot four, (only,) on which there was
judgment. The plaintiff brought error.

The case went to trial on the pleas of not guilty, ten years
limitation. The plaintiff, at the trial, introduced a deed from
John J. Budd to the plaintiff, dated June 23d, 1840, for the lots

one, two and three, which deed was regular on its face, acknowledged and recorded. The plaintiff, also, read in evidence a judgment of the Circuit Court of Pulaski county, against John J. Budd et al., and a sheriff's deed, dated in 1840, for lots two and four, purporting to be made by authority of a levy and sale of the above lots, on execution founded upon the above judgment. The deed was acknowledged and recorded. The plaintiff proved the possession of the defendant at the commencement of this suit, and a demand for the lots before suit brought.

The defendant then read in evidence three deeds from the Auditor of the State, for lots one, two and three, in the usual form, dated in February, 1847, and purporting to be founded on a forfeiture for the non-payment of taxes for the year 1844. He then proved that he had possession since the spring of 1837. That one Frail had possession before that time—that when the plaintiff left the State in 1841, he left Merrick agent to pay the taxes on his lands, but said nothing about his lots—that defendant had paid taxes on one, two and three from 1847 to 1854.

The plaintiff by way of rebutting the testimony of the defendant, and to destroy the effect of said deed, offered in evidence, from the record of the sheriff's advertisement of lands for the non-payment of taxes in 1844, and the record of the sale of land for the non-payment of taxes for that year, this extract: " Owners unknown, all of block 12, E. Q. line, in Little Rock, " year 1844, State tax 1 50, county tax 1 50, whole amount " including costs 4 03, to the State 1, 2, 3, 6 and 12, balance " paid before sale."

The plaintiff then offered in evidence two books purporting to be together the assessment list of Pulaski county, for the year 1844, and one of them had on it a certificate, that it was the original assessment list of Pulaski county, signed by the then assessor and collector; also, there was on it a receipt, signed by said assessor and collector, for the tax book of that year. He also proved that one Herndon Haralson was clerk of Pulaski county, in 1844, and was dead at the time of the trial: That

said books were found in the office in the fall of 1844, and had ever since remained' there, and had been constantly recognized as the original assessment list for that year. The plaintiff proposed to prove by said books, that the lots one, two and three, were not assessed in that year, in the name of " owners unknown," or "unknown owners." The defendant objected to their introduction because they were not marked filed, and because it did not appear that they were filed on or before the time required by law. The objection was sustained, and the plaintiff excepted.

The exclusion of these books is assigned for error: Thereby he was prevented from showing, that the land was not assessed in the name of "unknown owners."

The statute in force at the time of the foregoing assessment, required that the assessor should file his original assessment list, on or before the 25th day of March, in each year, with the clerk of the County Court. *English's Digest* 874. The filing of a paper does not consist of the marking put on it by the clerk, but in placing it as a permanent record in the office, or case where it belongs. *The State vs. Garvin,* 7 *Eng. Rep.* 64; *Thompson & Boyer vs. Foster's admr.,* 1 *Eng.* 210; *Keith vs. Berkley & Wood,* 2 *Eng.* 469. There is sufficient and satisfactory evidence that the books offered were the assesment list of Pulaski county for the year 1844. As to the time of filing—it was there in the fall of 1844, and it was turned over to the successor of the clerk who received it, as such list. The clerk who received it is dead, so it cannot be proved when it was received. The sheriff filed it in the proper office, and since the date of filing does not appear, it will be presumed that it was filed within the time prescribed by law. *Maury Ex. vs. Cooper Ex.,* 3 *J. J. Marshall* 225; *Wheelock vs. Hale,* 3 *N. Hamp. Rep.* 310; *Wilson vs. Gale,* 4 *Wendell* 623.

The only remaining question is, whether the facts proposed to be proven were material and relevant.

Under our laws, tax titles are to be upheld, when held in conformity with law, and when they can be sustained by any

reasonable intendment. *Hogan vs. Brashears*, 8 *English* 230. No exception can be taken to a deed, but such as shall apply to the real merits of the case, and consistent with a fair and liberal interpretation of the intention of the General Assembly. *Digest sec.* 131, *Title Revenue.* "Trivial non-conformity" of the proceedings of a sale, with the law, which in no way touch the merits of the case, would not invalidate a sale. *Patrick vs. Davis*, 15 *Ark.* 370. On the other hand, the proceeding to sell land for taxes is by a special authority, and there must be a substantial compliance with the law, or the sale cannot be sustained; and while the deed of the auditor is *prima facie* evidence of the regularity of the proceedings, it may be attacked by proof of fatal irregularities. *Merrick vs. Fenno and Hutt*, 15 *Ark.* 331; *Patrick vs. Davis, ib.* 370; *Hogan vs. Brashears*, 8 *English* 230.

An assessment is essential as the first step in a proceeding to sell land for taxes. It has been said to fill the place of a judgment in an execution sale; if there is no assessment, then there is no charge upon the land. It is essential that a levy be recited to make a valid deed by the collector. *Pillow vs. Roberts*, 7 *English* 822.

Our laws evidently contemplate that, while an assessment and sale in a wrong name shall not invalidate the sale, the assessment and sale shall be in the same name. *Sec.* 11 of our revenue law provides, that the assessor shall make an alphabetical list of the names of property holders. *Sec.* 13, the assessor shall attach to each name a description of his property. *Sec.* 43, the clerk shall make two tax books. *Sec.* 95, *English's Digest*, the assessor shall make a list of lands and town lots, setting forth the *owner's names* as the same are described in the tax book. *Sec.* 96, a copy of the list shall be advertised. *Sec.* 97, a copy of the list shall be recorded.

In every step it is evidently intended that the owner's name shall be the same in the assessment, as in the advertisement and sale.

This is not a mere technicality, for if the assessment fills the

place of a judgment, and the tax book the execution, then, assuredly, a vital variance between the two, as to the person taxed, would be fatal. .

We therefore hold that the assessment, advertisement, and sale, must be in the same name. *Shemmin vs. Inman*, 26 *Maine Rep.* 232; *and Wait vs. Gilmore*, 2 *Yeats* 330.

Let the judgment be reversed.

Mr. Chief Justice ENGLISH did not sit in this case.