WILLIE JOHNSON and CARRIE JOHNSON, his Wife, *Plaintiffs in Error,* v. WILHELMINA REYNOLDS, Joined by her Husband, GEORGE J. REYNOLDS, *Defendants in Error.*

En Banc.

Opinion filed April 16, 1929.

Petition for rehearing denied May 13, 1929.

*Dame & Rogers,* for Plaintiffs in Error;

*Alto Adams* and *W. H. Wolfe,* for Defendants in Error.

ELLIS, J.—Wilhelmina Reynolds, joined by her husband, George J. Reynolds, brought an action of ejectment against Willie Johnson and his wife, Carrie Johnson, to try the title to a strip of land one hundred feet wide lying on the east side of the W½ of the E½ of the SW¼ of the SE¼ of Section 4, Township 35 South, Range 40 East in St. Lucie County. There was a verdict for the plaintiff and judgment was entered in her favor. The defendants seek a reversal of the judgment on writ of error.

In preparing the transcript of the record Special Rules
1, 2 and 3 of the rules of the Circuit Courts in Law Actions
were followed. There is no certificate by the trial judge
appended to the bill of exceptions that it contains all the
evidence introduced at the trial, so the bill will be treated
and taken as one not embracing all the evidence. Special
Rule I. The fifteenth assignment of error therefore, which
challenges the ruling of the court denying a motion for a
directed verdict for the defendant cannot be considered.

In ejectment the plaintiff must recover if at all upon the
strength of his own title and not upon the weakness of that
of the defendant. Ropes v. Minshew, 51 Fla. 299, 41 So. R.
538; The Skinner Mfg. Co. v. Wright, 56 Fla. 561, 47 So. R.
931; Demps v. Hogan, 57 Fla. 60, 48 So. R. 998.

The presumption obtains that the verdict and judgment
were correct in so far as there was sufficient evidence to
support the former, and if all the evidence which was ad-
duced at the trial is not produced before this Court in a
bill of exceptions properly authenticated the plaintiff in
error, whose duty it is to make the error complained of to
appear must fail upon an assignment of error which attacks
the sufficiency of the evidence to support the verdict, or
the correctness of the court's order declining to instruct a
verdict in behalf of the complaining party. From anything
in the record appearing to the contrary both plaintiff and
defendants claim under the same title, the question being
merely a boundary dispute. In such case, even if there
were errors in admitting improper evidence of the common
title, they were harmless. See Rhodus v. Heffernan, 47 Fla.
206, 36 So. R. 572; Mansfield v. Johnson, 51 Fla. 239, 40
So. R. 196.

There are two errors appearing, however, which should
cause a reversal of the judgment. The consideration of
these and the conclusion we have reached upon the assign-
ments covering them render it unnecessary to discuss other

assignments. The questions presented in other assignments are interesting but unnecessary to the conclusion reached upon the two assignments above mentioned. However, it may not be out of place to observe that in the cross-examination of a witness great latitude is allowed that it may be shown what the witness' opportunities for observation were and his disposition to speak truthfully and his ability to speak accurately. The art of cross-examination is rarely possessed and many time greatly abused, particularly by those who seem to have no clear or definite conception of its use. In such cases the examination becomes a meaningless and tiresome expense of time which the court should suppress. But whenever counsel is within his rights and is seeking by the examination of a witness in cross to bring a helpful light upon the subject of the inquiry it is harmful error to deny him the right. Under certain circumstances the limits to which a cross-examination may extend may not well be defined. It is difficult to lay down a rule with any precision. Lawrence v. Barker, 5 Wend. (N. Y.) 305; 3 Greenleaf on Evidence (14 Ed.) 544.

But it might be well to observe that in the exercise of discretion by the trial judge to limit the extent of cross-examination of a witness by whom material and controlling points in a controversy of fact are sought to be established may easily abuse his discretion and commit reversible error.

In another trial of this case the same questions that are presented here by many assignments of error upon this subject may not arise so it is unnecessary to discuss them and besides they are not now necessary to a decision of this case.

The case presented merely a question of boundary and the defendants sought definitely to present it by amending the plea of not guilty by averring that they were not in possession of the land described in the declaration but that

their possession was confined to a tract the description of which was set forth with certainty in the plea and showed it to be a tract lying contiguous to the tract described in the declaration and could therefore present the one question of the location of the dividing line which separated the plaintiffs' tract from that of the defendants. The court declined to allow the plea to be filed. That ruling constitutes the basis of the first and second assignments of error.

A plea of not guilty and a plea denying possession are not inconsistent with each other and may be filed together in the same action. See Gill v. Graham, 54 Fla. 259, 45 So. R. 845; Watkins et al. v. Emmerson et al., 88 Fla. 86, 102 So. R. 10; Hall v. Fla. State Drainage Land Co., 89 Fla. 312, 103 So. R. 828; Buesing v. Forbes, 33 Fla. 495, 15 So. R. 209.

MR. JUSTICE STRUM, speaking for the Court, in the Hall v. Fla. State Drainage Land Co. case, *supra*, pointed out that the plea denying possession puts the plaintiff to proof of the defendant's possession of the land described in the declaration.

The effect of the proposed amendment was to present the sole question of boundary and would have put the plaintiff to the proof of the correct line. All the documentary evidence relating to title, court decrees, master's deeds, etc., was superfluous. To require it all was an unecessary expense and tended to delay and confusion at the trial. The proposed plea in effect admitted the plaintiff's title to the land described in the declaration but averred that she was in error as to the boundary line. By refusing to allow the amended plea to be filed the proof of title to the land described in the declaration became necessary. The defendant's plea of not guilty upon which he was forced to go to

trial admitted his possession of the land and thrust upon him the burden of showing the true boundary line.

The other error consisted in allowing the man K. L. Scott to serve as a juror in the case over defendants' objection to him. This ruling is made the basis of the third and fourth assignments of error. While the jury was being selected to try the case Scott was asked by defendants' counsel if there was any reason why he could not conscientiously sit as a juror in the trial of the cause and render a fair and impartial verdict. The man answered that he was afraid he could not render a fair verdict because of his friendly relations with plaintiffs' attorney and if there "was any doubt in his mind he would give the plaintiffs the benefit of the doubt"; that it would embarrass him to render a verdict against the plaintiffs. Afterwards upon questions by plaintiffs' counsel and the trial judge the man said that he "would go into the jury and render a fair and impartial verdict according to the evidence and the evidence alone."

In the first instance of his examination the man fairly admitted his unfitness, his lack of qualification to serve as a fair and impartial judge of the evidence; to render a verdict against the plaintiffs would embarrass him; he was biased in their favor and could not render a fair verdict; that he was very friendly to the plaintiffs' attorney and on account of that would resolve all doubts in favor of the plaintiffs. The bill of exceptions does not disclose the nature of the examination and character of questions propounded by plaintiffs' counsel and the judge which wrought such a change in the quality of the man's philosophy or the attitute of his mind toward impartial investigation and juristic obligations.

Notwithstanding his answer to the latter questions, we are not surprised that defendants' counsel think that the

trial in which that juror participaed was tainted by the suspicion, if indeed not by the fact of his unfairness, by reason of his bias for the plaintiff which existed because of his friendly relations with their counsel. The term friendship is often misused and those who think that its bonds require a departure from official duty which is to be performed under oath place an hyperbolical valuation upon its obligations which may very materially impair the constitutional guaranty of a jury trial to the degree of violating it when they are called to serve as jurors.

If there is a doubt as to the juror's sense of fairness or his mental integrity he should be excused. It is ground of challenge for cause. See 1 Thompson on Trials Sec. 73 n 5; Melbourne v. State, 51 Fla. 69, 40 So. R. 189; Walsingham v. State, 61 Fla. 67, 56 So. R. 195; Crosby v. State, 90 Fla. 381, 106 So. R. 741; Washington v. State, 86 Fla. 533, 98 So. R. 605.

Mr. Chief Justice Russell, in Temple v. C. of Ga. Ry. Co., 15 Ga. App. 115, 82 S. E. R. 777, said: "If error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors" (779 text) which we interpret to mean that the mind of the proposed juror should contain no element of prejudice for or against either party in a cause to be tried before him.

Although when a question of the juror's fitness to serve on the score of his freedom from prejudice is presented the question is determined within the discretion of the judge, see Metzger v. State, 18 Fla. 481, his discretion may be abused and if it is it is subject to review.

Mr. Thompson in his excellent work on Trials says that refinements and distinctions between "bias" and "prejudice" can serve no useful purpose in the administration of justice. If the proposed juror is affected by either state of mind it cannot be said that he is fair minded and impar-

tial and if accepted as a juror that he would be of that standard of impartiality which is necessary to prevent an impairment of the right to jury trial. It is difficult, if not impossible, to understand the reasoning which leads to the conclusion that a person stands free of bias or prejudice who having voluntarily and emphatically asserted its existence in his mind, in the next moment under skillful questioning declares his freedom from its influence. By what sort of principle is it to be determined that the last statement of the man is better and more worthy of belief than the former? We think that the juror should have been excused upon the challenge by the defendant for cause and denying the challenge was reversible error.

The judgment is reversed.

TERRELL, C. J., AND WHITFIELD AND STRUM AND BUFORD, J. J., concur.

BROWN, J., dissents in part.

BROWN, J. (Dissenting in part.): After having interposed the plea of ''not guilty'' the defendants sought to amend such plea as follows:

Comes now the defendants Willie Johnson and wife Carrie Johnson, by their attorneys Dame & Rogers, and amend their plea to the declaration, and for amendment say that they are not now in possession of any part of the property described in the Declaration, but that their possession is confined to property in the East Half of the East Half of the SW¼ of the SE¼ of Sec. 4, Tp. 35 So. R. 40 E. and that their lands extend west to a certain fence on the West boundary of their property.

I do not think the court erred in refusing to allow this amendment, as the effect of it would have been to combine in one plea a plea of the general issue and a plea denying possession. Either of these are proper pleas in an action of this kind, and a plea of not guilty and a plea denying possession can both be filed at the same time. But they are nevertheless independent and distinct pleas, setting up entirely independent and distinct defenses.

The evidence that would support one plea is entirely different from that necessary to support the other. One denies the plaintiff's title and the other denies that the defendant is in the possession of the land described in the declaration. It is error to permit both defenses to be combined and set up in one plea.

A plea which contains more than one independent fact, or set of facts, either of which alone is a sufficient answer to the allegations of the declaration, is bad for duplicity whether the defense is in bar, or in abatement, or in both.''

7 Encyc. of Pldg., and Prac., 238; 19 C. J. 1124. In Bemis v. State, 3 Fla. 12, it was held that a plea setting up both tender and performance was double. It was there said: ''It is one of the first rules of pleading that pleadings must not be double; and a plea that contains within itself several distinct answers is bad.'' Citing both Stephen and Chitty. The Statute, Sec. 5044 C. G. L., says: ''The plea 'not guilty' shall put in issue the title of said lands in controversy. Such plea shall be held to admit the possession of the defendant, or in case of an adverse claimant, the adverse claim of the defendant. Should the defendant wish to deny possession, it should be done by special plea.'' This indicates that such denial of possession should be by separate plea. I do not think therefore that the court was

in error in refusing to allow the amendment. The matter of the amendment could very well have been offered as an additional independent plea, but it was not proper to offer it as an amendment to the plea of the general issue. As framed, the amendment did not purport to withdraw the plea of the general issue, and substitute the amendment in the place of it, but it evidently was intended to add the amendatory matter to the plea already pleaded.

In other respects, I concur in the opinion and in the judgment of reversal.