# Third District Court of Appeal

## State of Florida

Opinion filed August 13, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-1620
Lower Tribunal No. 12-890-K
_____

**Benito Lopez Gonzalez,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Monroe County, Wayne M. Miller, Judge.

Carlos J. Martinez, Public Defender, and Harvey J. Sepler, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Keri T. Joseph, Assistant Attorney General, for appellee.

Before SUAREZ, ROTHENBERG, and LOGUE, JJ.

ROTHENBERG, J.

Benito Lopez Gonzalez ("the Defendant") appeals his conviction for lewd and lascivious molestation based on the trial court's refusal to strike a juror for cause. Because we find that there was no manifest error in the trial court's denial of the cause challenge, we affirm.

## FACTUAL BACKGROUND

The Defendant was charged by information with two counts of molesting his twelve-year-old step-daughter. During jury selection, the trial court asked all of the potential jurors if anyone felt, based on the nature of the case, they **might** be prejudiced or biased. The following exchange took place:

> THE COURT: Now, is there anything because of the nature of the charge itself that would cause any of you to be prejudiced or biased in this particular kind of case. I would like to do it section by section if I may. Is there anybody on your right, my left who feels that they might be prejudiced or biased in this particular kind of case.
> [Ms. Johnson raises her hand.]
> All right. That is Ms. Johnson. Is that right?
>
> PROSPECTIVE JUROR JOHNSON: Yes.
> [The court then informed all the jurors to speak up or nod so their responses could be noted.]
>
> THE COURT: All right. Ms. Johnson, would you tell us?
>
> PROSPECTIVE JUROR JOHNSON: I'm sorry. What?
>
> THE COURT: You said you might have a problem with prejudice or bias?
>
> PROSPECTIVE JUROR JOHNSON; Yes, I do.
>
> THE COURT: All right. Can you give us an idea?

2

PROSPECTIVE JUROR JOHNSON: I was molested as a child.

THE COURT: All right. I am very sorry to hear that. Ms. Johnson, we all get affected by what happens to us in our life and it creates all the biases and prejudices that we all live with and if we're honest with each other and honest with ourselves we recognize that we have those. Even though you might have some feelings or some thoughts about this issue, is it possible for you to set those aside and base your decision in this case only on what you hear in the courtroom?

PROSPECTIVE JUROR JOHNSON: Yes.

THE COURT: All right. Thank you.

Later, during voir dire, the prosecutor, Ms. Dunn, questioned Ms. Johnson about her experiences.

MS. DUNN: All right. Ms. Johnson, you have already indicated to Judge Miller that you would be able to rely upon the evidence in this case even though you yourself were molested. Knowing that a child between the ages of 12 and 16 is going to testify in this case, would you be able to make a decision relying on that child's testimony?

PROSPECTIVE JUROR JOHNSON: I believe I would.

MS. DUNN: Should we be concerned that if you are picked as a juror that you would relate back to your own experience and that it would interplay in your decision?

PROSPECTIVE JUROR JOHNSON: I don't think it would. I have had a lot of therapy.

MS. DUNN: Okay. And I apologize for asking these questions, but we—just like there are individuals that have opinions about a child testifying, you yourself have a life experience which we need to ensure does not come into that deliberation process. Can you assure us that you will make your decision and interact in deliberations and comment solely on the evidence presented?
[No response was noted, but Ms. Johnson presumably nodded yes.]

3

I have nothing further. Thank you for your time and attention.

The assistant public defender, Mr. Kaufman, also asked Ms. Johnson about her experiences:

> MR. KAUFMAN: Ms. Johnson. What about you? Do you think you might make a good juror in this case?
>
> PROSPECTIVE JUROR JOHNSON: I do.
>
> MR. KAUFMAN: Why is that?
>
> PROSPECTIVE JUROR JOHNSON: I think that I can be fair and honestly evaluate the situation.
>
> MR. KAUFMAN: So we shouldn't be concerned about your past molestation?
>
> PROSPECTIVE JUROR JOHNSON: I spent the last ten years putting my past away.
>
> MR. KAUFMAN: Okay. Well thank you for your time and answers.

After voir dire, the assistant public defender moved to strike Ms. Johnson for cause, arguing solely that Ms. Johnson could not sit on the jury because she had been the victim of the same type of crime the Defendant had been accused of committing.

> MR. KAUFMAN: Cause, Judge. She was molested as a child. She suffered as a victim in the same way as the victim in this case.
>
> THE COURT: I didn't hear anything from her answers that would indicate that she has any challenge for cause.
>
> MR. KAUFMAN: **There is case law that a victim with the same type of offense cannot serve as a juror**.

THE COURT: I am not familiar with that. Deny the motion for challenge for cause.

MR. KAUFMAN: So you're denying the cause challenge.

(emphasis added). Mr. Kaufman then used a peremptory challenge to strike Ms. Johnson.

Mr. Kaufman exhausted his peremptory challenges and then later requested an additional peremptory challenge to excuse juror Phillips, whose wife worked at the State Attorney's Office. The trial court denied the request for an additional peremptory challenge, thereby allowing Mr. Phillips to sit as a juror on the case, and defense counsel again objected to the panel.[1] The panel, including Mr. Phillips, ultimately convicted the Defendant of one count of lewd and lascivious molestation. This appeal followed.

## ANALYSIS

The Defendant contends the trial court erred by failing to excuse Ms. Johnson for cause, relying primarily on the Florida Supreme Court's recent decision in Matarranz v. State, 133 So. 3d 473 (Fla. 2013). However, the

---

[1] To preserve for appellate review the denial of a for-cause challenge of a juror, the defendant must "object to the jurors, show that he or she has exhausted all peremptory challenges and requested more that were denied, and identify a specific juror that he or she would have excused if possible." Kearse v. State, 770 So. 2d 1119, 1128 (Fla. 2000). In this case, the for-cause challenge was clearly preserved for these purposes, although we take issue with the specificity of the Defendant's objection to Ms. Johnson's presence on the jury panel.

5

Defendant did not specifically and contemporaneously object to Ms. Johnson's alleged prejudice or bias based on her responses, and therefore, the Defendant has not preserved that argument for appeal. Additionally, even if the Defendant's arguments had been preserved, Matarranz does not dictate reversal on these facts. The Matarranz holding was based on the prospective juror's repeated insistence that she could not be fair coupled with the trial court's repeated attempts to rehabilitate the juror. Matarranz is, therefore, clearly distinguishable from the present case where Ms. Johnson merely raised her hand in response to a general question from the trial court and thereafter consistently maintained her ability to be fair and impartial. We accordingly affirm the Defendant's conviction and sentence.

## I. The Defendant's Argument Raised on Appeal was not Preserved Below

It is well established Florida law that an objection must be specific and contemporaneous in order to preserve that argument for appeal. Harrell v. State, 894 So. 2d 935, 939-40 (Fla. 2005). Section 924.051(3) of the Florida Statutes (2013) provides:

> An appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error. A judgment or sentence may be reversed on appeal only when an appellate court determines after a review of the complete record that prejudicial error occurred and was properly preserved in the trial court or, if not properly preserved, would constitute fundamental error.

Section 924.051(1)(b) further clarifies the issue by defining the term "preserved" to mean that "an issue, legal argument, or objection to evidence was timely raised before, and ruled on by, the trial court, and that the issue, legal argument, or objection to evidence **was sufficiently precise that it fairly apprised the trial court of the relief sought and the grounds therefor**." (emphasis added).

The purpose for the specific objection rule is obvious: A party must put the trial court on notice of the specific objection or error so that the trial court has an opportunity to rule correctly or to correct an error early in the proceedings rather than allowing the error to go unnoticed and then appealing the error after an unfavorable ruling. F.B. v. State, 852 So. 2d 226, 229 (Fla. 2003) ("The requirement of contemporaneous objection thus not only affords trial judges the opportunity to address and possibly redress a claimed error, it also prevents counsel from allowing errors in the proceedings to go unchallenged and later using the error to a client's tactical advantage."); see also Harrell, 894 So. 2d at 940; Castor v. State, 365 So. 2d 701, 703 (Fla. 1978). The specific and contemporaneous objection rule is especially important for objections during the jury selection process because errors in this regard can often negate an otherwise perfectly presided trial. See Carratelli v. State, 832 So. 2d 850, 857 (Fla. 4th DCA 2002) ("Requiring the record to demonstrate preservation of an objection to an erroneous denial of a cause challenge is justified by the severity of the sanction for

such a mistake. In such cases, reversal is automatic, even where the trial is otherwise perfect, even if the questioned juror actually served with the wisdom of Solomon.").

The Defendant's argument on appeal is that the trial court abused its discretion by denying the Defendant's motion to strike Ms. Johnson for cause based on her **responses,** which he claims suggest that Ms. Johnson would have been prejudiced against the Defendant. That particular argument was **not**, however, the basis of the Defendant's objection to the trial court below. During jury selection, the Defendant's counsel moved to strike Ms. Johnson for cause on the basis that: "She [Ms. Johnson] was molested as a child. She suffered as a victim in the same way as the victim in this case." In challenging Ms. Johnson for cause, the Defendant specifically claimed that "[t]here is case law that a victim with the same type of offense cannot serve as a juror." Thus, the Defendant's objection was based on his argument that the mere fact that Ms. Johnson had been a victim of a similar offense meant she must be stricken for cause, not that Ms. Johnson could not be a fair and impartial juror based on her specific responses. Based on the Defendant's objection, the trial court correctly noted that there is no case law holding that a juror is automatically disqualified from serving if he or she had been the victim of a similar offense as the one being tried and therefore denied the challenge.

Because the trial court did not err by denying the Defendant's motion to strike Ms. Johnson for cause based on the **specific objection raised**—that because Ms. Johnson was a victim of a similar offense, she **could not** serve as a juror—and this was the sole ground raised by the Defendant, the Defendant did not preserve the argument he now makes on appeal.  See Carratelli, 832 So. 2d at 855-57 (finding that the trial court erred by denying the defendant's for-cause challenge of three jurors, but affirming the conviction because the objections had not been properly preserved).

## II. The Trial Court did not Err by Denying the Cause Challenge

Although the Defendant did not object to Ms. Johnson serving as a juror based on her responses, there was nothing that Ms. Johnson said that would have required that she be stricken for cause even if there had been a proper objection. Ms. Johnson never actually expressed bias or prejudice against the defendant. Rather, she candidly informed the trial court that she had been a victim of molestation herself as a child and maintained throughout the questioning that she could be fair and impartial.  Under these circumstances, the trial court did not abuse its discretion by denying the Defendant's motion to strike Ms. Johnson for cause.

The Defendant claims that the Florida Supreme Court's decision in Matarranz requires a reversal in this case.  The Defendant's reliance on Matarranz,

9

however, is misplaced. First, <u>Matarranz</u> does **not** establish a bright line rule that a juror who has had a personal experience relating to the case must necessarily be stricken for cause; and second, the juror's responses in <u>Matarranz</u> are clearly distinguishable from Ms. Johnson's responses in the instant case.

A. *<u>The Florida Supreme Court did not create a bright line rule in</u> <u>Matarranz</u>.*

The Defendant contends that Ms. Johnson should have been removed for cause based on the Florida Supreme Court's decision in <u>Matarranz</u> and that the trial court's failure to do so requires a new trial. We disagree.

<u>Matarranz</u> was not written on a blank slate, nor did it expressly or indirectly overrule years of decisional or statutory law. Section 913.03 of the Florida Statutes, which specifies the grounds for challenging a juror for cause, provides: "A challenge for cause to an individual juror may be made **only** on the following grounds," and then lists twelve separate grounds. § 913.03, Fla. Stat. (2013) (emphasis added). Section 913.03(10), the only relevant subsection in the instant appeal, provides that a cause challenge may be made when:

> (10) The juror has a state of mind regarding the defendant, the case, the person alleged to have been injured by the offense charged, or the person on whose complaint the prosecution was instituted **that will prevent the juror from acting with impartiality**, but the formation of an opinion or impression regarding the guilt or innocence of the defendant shall not be a sufficient ground for challenge to a juror if he or she declares and the court determines that he or she can render an impartial verdict according to the evidence[.]

10

(emphasis added).

Thus, the statutory test for a cause challenge based on bias or prejudice is whether the juror's state of mind will prevent him or her from serving as a fair and impartial juror, and the case law has applied section 913.03 uniformly for decades. In applying this standard, the Florida Supreme Court has consistently recognized that juror prejudice is a discretionary determination and that the trial court abuses its discretion only where there exists a reasonable doubt as to a juror's ability to render a verdict free from bias or prejudice based on the totality of the juror's responses. See Banks v. State, 46 So. 3d 989, 995 (Fla. 2010) (noting that a juror must be excused for cause if there exists any reasonable doubt as to whether the juror possesses an impartial state of mind); Kopsho v. State, 959 So. 2d 168, 170 (Fla. 2007).

The Florida Supreme Court has also consistently recognized that although a juror may express certain biases or prejudices, the issue is whether the juror can and will set aside his or her personal views and render a verdict based solely on the law in light of the evidence introduced at trial. Gore v. State, 706 So. 2d 1328, 1332 (Fla. 1997) ("Although [the jurors] expressed certain biases and prejudices, each of them also stated that they could set aside their personal views and follow the law in light of the evidence presented."); Lusk v. State, 446 So. 2d 1038, 1041 (Fla. 1984) ("The test for determining juror competency is whether the juror can

11

lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court."); Singer v. State, 109 So. 2d 7, 24 (Fla. 1959) (concluding that the true test is not whether the juror will yield his or her opinion, bias, or prejudice, but rather, whether the juror will be able to put that opinion, bias, or prejudice completely out of his or her mind and base his or her verdict solely on the evidence presented at trial); see also Carratelli v. State, 961 So. 2d 312, 318 (Fla. 2007); Busby v. State, 894 So. 2d 88, 95 (Fla. 2004); Bryant v. State, 656 So. 2d 426, 428 (Fla. 1995).

When determining whether a juror can set aside any preconceived opinions, bias, or prejudice and whether the juror possesses an impartial state of mind and can render a fair and impartial verdict, the trial court must carefully examine all of the questions and answers posed to or received from the juror. Matarranz, 133 So. 3d at 485 ("A trial court's determination of whether a juror can render a verdict based on the evidence presented involves an evaluation of 'all of the questions and answers posed to or received from the jurors.'" (quoting Banks, 46 So. 3d at 995)).

The law is also clear that "[i]t is within a trial court's province to determine whether a challenge for cause is proper, and the trial court's determination of juror competency will not be overturned absent manifest error." Fernandez v. State, 730 So. 2d 277, 281 (Fla. 1999), quoted by, Busby, 894 So. 2d at 95. Indeed, the trial court's determination whether a juror challenged for cause is fit to sit on the panel

is to be given great weight by a reviewing court because the trial court is uniquely able to assess the juror's demeanor, responses, and reactions to questions on voir dire. Carratelli, 961 So. 2d at 319 ("[T]he trial court 'has a unique vantage point in the determination of juror bias' that is unavailable to us in the record." (quoting Smith v. State, 699 So. 2d 629, 635-36 (Fla. 1997))); Smith, 699 So. 2d at 635-36 ("In reviewing a [cause challenge] such as this, we have recognized that the trial court has a unique vantage point in the determination of juror bias. The trial court is able to see the jurors' voir dire responses and make observations which simply cannot be discerned from an appellate record."); see also Mendoza v. State, 700 So. 2d 670, 675 (Fla. 1997) ("A trial court has latitude in ruling upon a challenge for cause because the court has a better vantage point from which to evaluate prospective jurors' answers than does this [appellate] Court in our review of the cold record."). Accordingly, "[t]he decision to deny a challenge for cause will be upheld on appeal if there is support in the record for the decision." Busby, 894 So. 2d at 95 (citing Gore, 706 So. 2d at 1332).

Although the reviewing court must recognize the trial court's unique vantage point in determining juror bias and prejudice, the reviewing court is not necessarily required to defer to the trial court's superior vantage point if the challenged juror's answers are equivocal or the juror's responses change due to the skillful questioning by the lawyers or the trial court. See Busby, 894 So. 2d at 95-

13

96 (finding that although equivocal responses do not necessarily disqualify a juror from serving, because the challenged juror equivocated on the most crucial issue—his ability to deliberate in an unbiased manner—he should have been excused for cause); Johnson v. Reynolds, 121 So. 793, 796 (Fla. 1929) (finding that the juror should have been excused for cause where he initially admitted his unfitness and lack of qualifications to serve as a fair and impartial juror but stated he would render a fair and impartial verdict after skillful questioning).

In Matarranz, the Florida Supreme Court applied these age-old principles, including much of the case law cited herein, in reviewing the denial of a cause challenge of a juror who indicated that she had been the victim of one of the offenses with which the defendant had been charged (burglary) and **repeatedly and expressly** stated during voir dire that **she did not believe she could be fair**. 133 So. 3d at 477-481. The Matarranz Court, contrary to the Defendant's assertions, did not establish new law or abandon prior precedent. Rather, the Florida Supreme Court applied existing law and simply reminded trial courts and reviewing courts of their obligation to remain vigilant when assessing potential juror bias and prejudice, which requires more than just a review of the last answers provided by a juror.

The Matarranz Court merely reiterated prior decisional law recognizing the need to carefully examine the genuineness of a juror's assurances that he or she

14

can be fair after expressing strongly held opinions, bias, or prejudice and to apply strong skepticism for a sudden change of heart after skillful questioning. In Matarranz, the Florida Supreme Court relied on Hill v. State, 477 So. 2d 553, 555-56 (Fla. 1985), and Singer, 109 So. 2d at 2324, to reiterate that "if there is a reasonable basis to doubt a juror's impartiality, then that juror should be excused." Matarranz, 133 So. 3d at 488. The Court similarly relied on Overton v. State, 801 So. 2d 877, 893 (Fla. 2001), when stating that "[n]otwithstanding 'tortured attempt[s] at rehabilitation,' the totality of the [j]uror's responses" must be examined. Matarranz, 133 So. 3d at 488 (second alteration in original) (quoting Overton, 801 So. 2d at 893). We accordingly look to the totality of Ms. Johnson's responses to determine whether the trial court abused its discretion by denying the cause challenge. A comparison of the facts from Matarranz with the facts of this case is particularly illustrative.

B. *Why the trial court in Matarranz erred in denying the cause challenge*

By our count, the juror in Matarranz reiterated no less than eight times that she did not believe she could be fair or otherwise indicated that she would "lean" one way or the other if required to sit on the jury panel. The juror in Matarranz made very strong statements indicative of bias, including the following:

- "I don't think I could be fair against [the defendant] because I hold that grudge."
- "[I]t is something that just stays there. I know how [the past crime] affected us and how everything happened. It was during the holiday season and it

15

was just crazy and it just makes me sad about it and it brings back bad memories."

- Judge: "When you look over at these two tables which way does your judgment go, if you feel like you have one?" Juror: "Towards [the defendant]."

- "I could have an open mind about it, but it is still—knowing myself I think I would lean more towards the State of Florida just because I don't think that it is right for someone to come in and take something that someone worked so hard for and take their life away from that person."

- After being asked whether she could have an open mind, the juror stated: "Yes, I think I could. Just like you say maybe I would lean a little more to one side, but I would have to hear everything before I can actually make a decision."

- "I can put it aside but, it is just that with my past experiences—I have an old mind in all things and I know that I can do it. It is just that I rather not, just because—I mean, put it aside, but I can have an open mind and put all my feelings aside. . . ."

After extensive questioning by the State, the defense, and the trial court, the juror ultimately stated that she believed she could be fair and set aside her past experiences.

When defense counsel moved to strike the juror for cause based on her expressed bias and prejudice—notably, with a specific and contemporaneous objection—the trial court denied the cause challenge by stating:

> I'm going to deny the cause challenge. **Having only had heard** [sic] **testimony from yesterday, I would have been inclined to grant it**, but her testimony yesterday includes the fact that there had been this burglary when she was eight years old, that was emotional for her because it included the theft of her Christmas toys and today based on her demeanor, I believe from her reflection, **I think she was embarrassed** and she said that she thought about it last night and she said that she felt that she had more of an opened [sic] mind today and that she could be fair and she realized that that burglary that happened to her had nothing to do with this case. So, for those

16

reasons I'm going to deny the cause challenge; do you wish to exercise a peremptory?

Id. at 481.

The Florida Supreme Court in Matarranz found that the juror "demonstrated that she could not fulfill her role as a fair and impartial arbiter and thus she should have been excused for cause" based on the totality of the juror's responses. Matarranz, 133 So. 3d at 477. In reaching this conclusion, the Florida Supreme Court noted the juror's own concerns that she would be biased against the defendant, id. at 489, and the trial court's finding that the juror had essentially been embarrassed and urged into the posture where she eventually conceded that she would separate her past experiences from the trial of the defendant. Id. at 490. The Florida Supreme Court thus concluded that "[a] court should assess a juror's ability to be fair and impartial based on the genuineness of his or her statements, not on whether the juror has reached a sufficient level of discomfort to reject or conceal genuinely-held feelings." Id. at 489.

C. *Why the trial court in the instant case did not err in denying the cause challenge*

The facts of this case differ radically from those addressed in Matarranz. Where, as here, the juror in question merely raised her hand to candidly respond to a generalized question from the trial court, never affirmatively expressed any bias, and consistently and unequivocally maintained that she could set aside her past

17

experiences and be a fair and impartial juror, <u>Matarranz</u> does not require that she be excused for cause.

Unlike the prospective juror in <u>Matarranz</u>, who volunteered that she held deep-seated bias against the defendant, Ms. Johnson merely raised her hand when the trial judge asked the panel the generalized question whether anything about the case might potentially cause them to be biased or prejudiced. Unlike the prospective juror in <u>Matarranz</u>, who affirmatively announced her inability to be fair no less than eight times, Ms. Johnson never stated that she could not be fair or impartial. To the contrary, when asked if she could set aside any past experiences and render a verdict based solely on the evidence presented, Ms. Johnson unequivocally stated that she could. Unlike the prospective juror in <u>Matarranz</u>, who was expertly rehabilitated after questioning by counsel and the trial court, Ms. Johnson maintained her impartiality without the need to "rehabilitate" her even after pointed questioning from the Defendant's trial counsel. And, unlike the prospective juror in <u>Matarranz</u>, who even the trial court found was embarrassed into submission by repeated questioning from the trial court, Ms. Johnson proactively stated that she could be "fair and honestly evaluate the situation" without any prompting or rehabilitation from the lawyers or the trial court.

Simply put, this case is not <u>Matarranz</u>. To find manifest error for failing to remove Ms. Johnson for cause in the instant case would essentially strip the trial

18

court of all the discretion expressly given it over the past century in decisional law. We do not believe <u>Matarranz</u> stands for such a radical proposition, nor do its words purport to do so. The trial court must examine the totality of the juror's responses to determine whether there are any concerns that the juror can render an unbiased and impartial verdict and then scrutinize expressions of bias stemming from a juror's unchangeable life experiences.

Here, there was no indication that Ms. Johnson would be unfair or biased, and the trial court did not commit error in finding no cause to strike Ms. Johnson from the panel. Accordingly, we affirm.

Affirmed.